*1013 OPINION.
Marquette:
The issues that we are called upon to consider relate to the amounts at which the petitioner may include in its invested capital the tangible assets and good will it purchased from the predecessor partnership of Kaltenbach & Stephens, and the basis for computing the' annual deduction for depreciation of the tangible property. It is the contention of the petitioner that it acquired from the partnership tangible property of the actual cash value of $1,553,088.59 and good will of the actual cash value of $325,000, for which it issued its capital stock in the amounts of $1,553,688.59 and $325,000, respectively, and that it is therefore entitled to include them in its invested capital at those amounts. The respondent has heretofore determined that the tangible property so acquired by the petitioner had an actual cash value at the date of acquisition of $1,335,152.43, and the good will an actual cash value of $126,911.26, and he has included them in the petitioner’s invested capital at those amounts. However, the respondent now urges that the good will in question had no value and that the petitioner’s invested capital as heretofore determined by him should be reduced by the amount of good will allowed. The depreciation which the respondent has disallowed is the depreciation on the difference between the values of the tangible assets as claimed by the petitioner and allowed by the respondent.
Upon consideration of the evidence presented to us we are of the opinion that the tangible assets acquired by the petitioner from the partnership of Kaltenbach & Stephens had an actual cash value at the date of acquisition of at least $1,553,688.59 as claimed by the petitioner, and that it is entitled to include them in its invested capital at that amount. The evidence shows that these assets were appraised on September 1, 1916, and their reproduction cost on that date determined to be $1,553,688.59, and their sound value, which represented reproduction cost with allowances for depreciation, at $1,335,152.43. The appraisers were, however, not asked to determine the actual cash value of the plant as a going concern and did not *1014 attempt so to do. In addition to the sound value of the assets, there were certain elements such as the fact that Kaltenbach & Stephens was a going concern; that it would take two years to reproduce the plant even if the material and machinery could be acquired at the so-called sound value, and the fact that certain machinery was made in Germany and could not then be procured at all. Furthermore, in November, 1916, the date the transaction was actually consummated, prices of material and machinery had materially increased over the prices obtaining on September 1, 1916. The officers of the partnership and of the petitioner considered that the actual cash value of the tangible assets on that date was at least equal to their reproduction cost as shown by the appraisal, and the petitioner took them over at that value and issued its capital stock in amount therefor. The testimony of all the witnesses, one of whom made the appraisal mentioned, is to the effect that the actual cash value of the partnership plant as a going concern was at least the value now claimed by the petitioner, and we are satisfied that that value is conservative and that it should be allowed.
We are also satisfied from the evidence that the good will acquired by the petitioner from the partnership had an actual cash value of at least $325,000. The evidence shows that the partnership was formed in the year 1891 with a capital of $5,000; that no additional capital was ever invested therein, and that in January, 1916, the net value of its tangible assets as shown by its balance sheets was $1,335,152.43, all of which had been acquired out of earnings. The average earnings for the five years 1911 to 1915, inclusive, as shown by the balance sheets were $109,006.66. In addition to the earnings as shown by the balance sheets, large amounts had been withdrawn by the partners during that period. The exact amount of these withdrawals can not be ascertained, but the record does show that $134,590.80 were withdrawn during the period July 1, 1915, to June 30, 1916. Adding to the earnings as shown by the balance sheets only the amount withdrawn between July 1, 1915, and June 30, 1916, and capitalizing the earnings thus determined on the same basis adopted by the respondent, the good will would be of the value of $306,000. We are satisfied, however, that considerably more than $134,590.80 was withdrawn from earnings during the five-year period; that the average net earnings of the partnership during that period were at least $150,000, and that the good will was of the value of at least $325,000. This is the value placed on the good will by the petitioner and the partnership at the time of the transaction mentioned and it is, we think, entirely justified by the prior earnings in relation to the tangible assets, and the reasonable expectation for the future. That the value so determined at that time was reasonable, is borne out by *1015 the fact that the earnings of the petitioner averaged $325,000 per year during the years 1916 to 1920, inclusive. It is our opinion, and we so hold, that the good will in question had an actual cash value of at least $325,000 when the petitioner acquired it.
The petitioner in computing its invested capital for the years 1919, 1920, and 1923, is entitled to include the tangible property and the good will involved herein in its invested capital at the amounts of $1,553,688.59 and $325,000, respectively, with proper adjustments for depreciation of the tangible assets. The basis for computing depreciation of the tangible assets is $1,553,688.59.
Other errors on the part of the respondent were alleged by the petitioner but they were abandoned at the hearing.

Judgment will be entered under Rule 60.